CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

January 30, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

|  |  |  |
|---|---|---|
| ISAW WALEED BLAKE, | ) | |
| Plaintiff, | ) | Civil Action No. 7:23cv00381 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| JOSEPH T. SARGENT, et al., | ) | By:  Robert S. Ballou |
| Defendants. | ) | United States District Judge |

Plaintiff Isaw Waleed Blake, a Virginia inmate proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983, alleging excessive force and bystander liability against multiple employees at the Pocahontas State Correctional Center arising from an incident on September 13, 2022. Blake's Third Amended Complaint named 19 defendants and raised the following claims: (1) Violation of due process rights by the forceful use of security measures (construed as a supervisory liability claim); (2) Excessive use of force, including bystander liability; (3) Retaliation; (4) Deliberate indifference to plaintiff's medical needs; (5) False arrest, malicious prosecution, and obstruction of justice; (6) Failure to train; and (7) the common law torts of battery and negligence. Defendants Cordle, Hicks, Johnson, Lawson, and Wagner have moved for summary judgment on all claims against them for failure to exhaust; while  defendants Sargent, Lee, and Smith have moved for partial summary judgment, likewise on exhaustion grounds..  Because Blake exhausted only his excessive force and bystander liability claims through the offender grievance procedure, I will grant these defendants' motions for summary judgment alleging Blake failed to exhaust his other claims.

### I.    STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is

material if it could affect the outcome of the trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence presented would allow a reasonable factfinder to find in favor of the non-moving party.  *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024).  Further, the court must view the facts and reasonable inferences from them in the light most favorable to the nonmoving party.  *Id.*

The main argument in the defendants' motion for summary judgment is that Blake exhausted only his claim for excessive force.  Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust all available remedies before filing a civil lawsuit arising out of the conditions of his incarceration.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This means he must properly avail himself of the full administrative process, to give prison officials the opportunity to address problems internally before a suit is filed.  *Id.* at 93–94.  Proper exhaustion requires complete compliance with the prison's procedural rules through the grievance process.  *Id.* at 90–91.  For purposes of this motion, the only relevant facts that must be undisputed will be those that bear on exhaustion.

## II. Factual Background

**A.** Blake's Allegations

Blake's 25-page Third Amended Complaint is the operative complaint.  In it, he alleges that he was sleeping in his bed on the morning of September 13, 2022, when Officer Sagady, Nurse Edwards, and others entered the cell block for Nurse Edwards to take COVID-19 temperature checks.  Blake awoke to hear Officer Sagady yelling "get your ass up!"  Blake got up, put on his slippers, and walked over to allow Nurse Edwards to take his temperature, and then she walked away to the next cell.  Sagady then approached Blake's cell and asked, "why are you such a bitch?"  Blake responded by asking, "what do you want, man?"  Sagady pulled out

his OC spray and ordered Blake to get on his knees in front of him. Blake refused and asked

why. Sagady told him he had three seconds to get on his knees. Blake told Sagady not to spray

him because he had a congenital cardiac murmur, and he asked to speak to a Sergeant or

Lieutenant. Instead, Sagady called a code on his radio, and while Blake stood there doing

nothing, Sagady sprayed him in the face.

Blake was now afraid for his life and feared further attack within his cell. He did not

know why he was being sprayed. He ran out of the cell so that the cameras in the pods could

record anything that happened, as assaults usually escalated outside of camera view. Outside the

cell, Sagady, Poe, and McBride grabbed Blake. McBride held Blake's arms, preventing him

from defending himself, while Sagady choked him. Paseno, Bogle, Brandon Smith, Remines,

Salyers, Dye, Cline, Browning, and Edmonds were on the lower floor of the pod, and Blake tried

to tell Paseno that he had been sprayed and choked and could not breathe. Paseno yelled, "I

don't give a f**k!" Paseno and the other officers joined in assaulting Blake while he was on his

knees; Blake believes they joined the assault in retaliation for an earlier grievance he had filed.

Remines then sprayed Blake again with OC spray, while Blake was on his knees.

When Blake got flat on the floor, nine people piled on top of his back, crushing his spine,

while Blake was choked unconscious. Blake states that he has pre-existing bone spurs in his

back and herniated disc all of which were exacerbated by their conduct. When he regained

consciousness, he had been hogtied with leg irons and handcuffs, and his feet were curled into

the small of his back. One officer lifted Blake in the air and yelled "You f**ked up now!" Then

he proceeded to drop Blake onto the floor. Then the officers picked him and carried him "in a

violent, malicious way." One officer used Blake's t-shirt collar to choke him, while Browning,

Bogle, Poseno, Sargent, and Remines carried him still "hogtied" to the RHU (rehabilitative

housing unit), causing sharp pain in his spine.

The officers dropped Blake into the shower floor in the RHU, but he was not allowed to

shower.  Bogle cut Blake's clothing off him and told Brandon Smith to "watch the camera." Then

Hylton, Remines, Daniel Smith, Salyers, Whited, and Sargent made a human wall to block part

of the camera view.  Browning then walked into the shower stall and punched and kicked the

right side of Blake's face and head, causing Blake's partial plate to come out, cracking an upper

molar.  Browning exited the shower stall and joined the human wall, looking up at the camera

like he had been there the whole time.  Bogle continued assaulting Blake by kicking him

repeatedly in the rib cage and resting his boot on the side of Blake's face.  While doing so, Bogle

said, "Can you breathe, George?"  Lee came in and stood by and asked Blake "what did you

do?"  Lee then said, "put his ass in five-point restraints" and walked away from the shower stall.

Bogle walked away from the shower stall and Blake was picked up and walked to the

RHU cell, past female staff members, wearing nothing but his boxers.  He was placed inside cell

one.  Warden Hicks approached the cell one window and looked at Blake for a long while, as

Blake begged her to help him because his head was hurting as if it was about to explode and he

was having trouble breathing.  Hicks asked Blake if he was "going to comply," and Blake said

yes.  Hicks left, and Blake received no medical treatment.  He remained in the restraints for

several hours. He never received medical attention for his physical injuries (back pain, swollen

eye, broken molar, and increased spinal pain).  However, he now takes medication for PTSD as a

result of the entire incident.

When released from the RHU, Blake was immediately transported to Wallen's Ridge

State Prison.  From there, he submitted his first complaint about the incident and advised of his

intent to sue.  Thereafter, on November 29, 2022 (over two months after the incident), Blake was indicted for in the Tazewell County Circuit Court on one count of assault on Officer Sagady, based on the grand jury testimony of H. E. Johnson which testimony Blake contends was false. All criminal charges in state court arising from this incident were was nolle prossed[1] on April 16, 2024.  Blake filed this civil rights lawsuit on June 28, 2023.  On July 9, 2024, Blake was reindicted in the Tazewell County Circuit Court for felony assault on Officer Sagady and indicted for felony assault on three additional officers, Sargent, Remines, and Paseno, based on the grand jury testimony of Jesse Wagner which Blake contends was false.  Three of those charges were nolle prossed on April 3, 2025, and the final charge was nolle prossed on May 27, 2025.  Blake alleges that Johnson, Wagner, and Lawson conspired to bring the charges against him to cover up misconduct that might be discovered in a federal investigation and to retaliate for Blake's civil lawsuit.

Blake's Complaint makes the following claims against the identified defendants:

1.  Violation of due process by defendant Tikki Hicks, Acting Warden, who allowed Blake to be injured by forceful security measures.

2.  Excessive force by:

    - Cody McBride for restraining Blake while Sagady choked him;

    - Jeremy Remines, David Bogle, Brandon Smith, Justin Salyers, Bobby Dye, Dusty Cline, Erwin Browning, and J. Edmonds for joining the assault on Blake, jumping on his back, and hog-tying him;

    - Jeremy Remines, Erwin Browning, Joseph Sargent, and David Bogle, for carrying him to the RHU in a violent manner;

---

[1] "Nolle prossed" a shortened form of the Latin phrase "nolle prosequi," refers to the Commonwealth's decision to dismiss or drop charges against a defendant.

- Jeremy Remines for using OC spray in Blake's face while he was on his knees and had been sprayed;

- Erwin Browning and David Bogle for punching and kicking Blake in the face, head and ribs, while he was restrained and prone on the floor.

3. Retaliation by Jeremy Remines, David Bogle, Brandon Smith, Justin Salyers, Bobby Dye, Dusty Cline, Erwin Browning, and J. Edmonds for Blake's prior use of the Offender Grievance Procedure.

4. Bystander liability by:

- Cody McBride for not stopping Sagady from choking Blake;

- Roger Hylton, Jeremy Remines, Brandon Smith, Daniel Smith, Justin Salyers, Rodney Whited, and Joseph Sargent, for standing by and making a makeshift wall while Browning and Bogle kicked and punched Blake

- David Lee for observing Browning and Bogle kick and punch Blake and failing to stop the abuse.

5. Deliberate indifference to serious medical needs by Tikki Hicks, Nurse Cordle, David Lee, and Brandon Smith.

6. False arrest, liberally construed as malicious prosecution, by Lawson, Wagner, and Johnson.

7. Retaliation by Wagner and Johnson for filing the civil lawsuit.

8. Failure to properly train against Tikki Hicks and David Lee.

**B. Exhaustion**

Defendants submitted the affidavit of C. Smalling, Operations Manager at Pocahontas, to support their position that Blake failed to exhaust his remedies for any claims other than

excessive force and bystander liability.  Smalling attached and explained the Virginia Department

of Corrections Operating Procedure 866.1, the Offender Grievance Procedure applicable to

inmates, in effect during 2022.  She summarized the exhaustion procedures by saying that an

inmate "was required to submit a Written Complaint . . . and then follow up that Written

Complaint with a Regular Grievance and then appeal that Regular Grievance through to Level

II."  *Id.* at 5-6. The Operating Procedure itself provides a more fulsome overview of the process:

1. The first step in the informal complaint process is for the inmate to discuss their issue with staff for a quick resolution; see *Verbal Complaint* section.

2. If the issue is not resolved to the satisfaction of the offender, the offender may submit a *Written Complaint* [Form] 866_F3. The *Written Complaint* must be received by designated staff within 15 days of the original incident or discovery of the incident; see *Completing and Submitting a Written Complaint* section.

3. Following receipt of a *Written Complaint*, staff have 15 days to provide an appropriate response to the complaint; see *Resolving and Responding to a Written Complaint* section.

4. If the issue on the *Written Complaint* is not resolved to the satisfaction of the inmate, or staff fail to provide a written response within 15 days, the inmate may file a *Regular Grievance* [Form] 866_F1.  The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident or discovery of the incident unless a more restrictive timeframe applies; see *Completing and Submitting a Regular Grievance* section.

   Note: A *Written Complaint* is not required when an inmate alleges sexual abuse or sexual harassment nor is it required when other documentation satisfies the informal complaint process (such as for classification hearings, disapproved correspondence/publications, and confiscated property). Written complaints are required for all other allegations prior to filing a *Regular Grievance*, in order to constitute an exhaustion of remedies prior to seeking *Judicial Relief*.  Failure to do so may result in a rejected regular grievance upon intake.

7

5. Following receipt of a *Regular Grievance*, the Institutional Ombudsman has two working days to accept or reject the grievance; see *Accepting or Rejecting a Regular Grievance* section.

   a. *Accepted Grievance* – If the grievance is accepted, staff has two working days from its receipt to issue a *Grievance Receipt.*

   b. *Rejected Grievance* – If the grievance is rejected, staff has two working days from its receipt to return the grievance to the offender for possible resubmission or appeal of the intake decision.

6. Following acceptance of a *Regular Grievance* 866_F1, staff has 30 days from its receipt to investigate and resolve the grievance; see *Reviewing a Grievance* section [unless a continuance is authorized].

7. If the grievance is not resolved to the satisfaction of the offender, the offender has five days to file an appeal; see *Completing and Submitting an Appeal* section.

8. If the offender files an appeal, staff has 20 days to review and respond to the appeal; see *Reviewing and Responding to Grievance Appeals* section.

9. If the appeal is not resolved to the satisfaction of the offender and all steps in the *Offender Grievance Procedure* are exhausted, the offender may elect to seek judicial relief; see *Judicial Relief* section.

Op. P. 866.1, § I(D), Dkt. No. 163-1 at 12–13.

The Procedure includes more detailed instructions, as well. For example, an inmate must attach a copy of the timely-filed Written Complaint to the Regular Grievance form. Further, the grievance must complain of a "grievable issue." Grievable issues include:

- Substance or administration of operating procedures

- Actions of staff, volunteers, and interns

- Retaliation against an inmate for using the *Offender Grievance Procedure*

8

- Department of Corrections' administration of the Interstate Compact Agreement

- Conditions of care in the Department of Corrections

Non-grievable issues are ones that are beyond the control of the prison or Department of Corrections, such as state and federal laws, court decisions, and policies of other agencies. Also, future events, disciplinary decisions, and grievance intake decisions are not grievable. Finally, the grieved issue must "[b]e identical to and limited to the issue submitted on the *Written Complaint*." Op. P. 866-1, § III(B).

Once a grievance has been accepted, the Institutional Ombudsman or someone he designates will investigate and respond to the grievance, finding it resolvable, unfounded, or indeterminate. This response is called an "*Offender Grievance Response – Level I*," and must be reviewed by the Facility Unit Head or Assistant Facility Unit Head before delivering it to the inmate. The Level I response includes a designated area for the inmate to appeal the response, the disposition, or the recommended remedy (if any). The inmate must explain why he is not satisfied with the response and send his appeal within five days to the respondent identified in the Level I response to handle the appeal. The respondent may uphold the Level I response or overturn it, with an explanation of his decision, in writing and signed on the *Offender Grievance Response – Level II* form. The form must also advise the inmate that he has exhausted his remedies. Op. P. 866-1, § IV(C).

Smalling's affidavit asserted that all inmates are "oriented to the Offender Grievance Procedure" when they first enter the Department of Corrections and each time they are transferred to a different facility. Dkt. No. 163-1 at 5. Blake's signed orientation paperwork was attached to the affidavit. *Id.* at 26.

Smalling also noted that all Written Complaints, accepted Regular Grievances, and Level I and Level II responses are logged into a Grievance Report. *Id.* at 5. As evidence that Blake was familiar with the procedure, Smalling attached Blake's Grievance Report, showing a number of documents at various stages in the procedure. *Id.* at 27–45. All paperwork regarding the incident of September 13, 2022, was also attached. *Id.* at 46–51.

In compliance with the procedures, Blake filed an informal written complaint on September 21, 2022. He reported the facts of the incident on September 13, 2022 as follows:

> Sept. 13, 2022, approx. 8:40 a.m. Officer Sagady, OIT Poe, OIT McBride, Officer Pasino with a number of other officers beat me to the ground. I plea (sic) for them to stop as they mased me and choked me. It's hard to breath (sic). While this went on officers (unknown) nealed (sic) on my back until I passed out. I am now praying for my life, but when I came to I realized that I've been HOG TIDE (sic), and being carried to SEG. Officers are now bending my fingers! I was dropped in the shower in SEG. At this time I played dead. Lieutenant (unknown) cut my sweat pant (sic) and shirt off of me then began beating me . . . All because I wouldn't take a knee when Officer Sagady ordered me to with his mase in hand.

Dkt. No. 163-1 at 46.

Blake was transferred to Wallen's Ridge shortly after the incident on September 13, 2022. Staff at Pocahontas received Blake's written complaint on September 28, and Investigator H. E. Johnson replied on October 3 that "[r]apid eye footage shows you resisting officers and failing to comply. Footage does not show you being beat to the ground as you wrote. This case has been forwarded to SIU for investigation." *Id.* Blake filed a second informal complaint containing substantially identical allegations on September 27, because he had not received a response to his initial complaint. Staff at Pocahontas received the second complaint on October 5, and Investigator Johnson rejected it as repetitive and having been addressed in response to the first written complaint. He added, "your case has been referred to SIU S. A. Wagner." *Id.* at 47.

10

Blake timely filed a Regular Grievance dated October 11, 2022, re-stating the same allegations, but adding that the incident occurred "[a]t PSCC GP Dayroom B-2 Pod." *Id.* at 50. Blake also added to the Regular Grievance the following: "What does the Rapid Eye footage show before and after I left your segregation (SEG) shower floor?  How did my HEAD become swollen how did my right eye become swollened (sic) shutt (sic) if I was not beat to the ground? So review the footage for SEG as well then explain to me how my face ended up battered and swollen." *Id.*  In the space for suggested remedy (action you want taken), Blake wrote that he wanted "real medical attention" and for the officers who beat him to be fired.  He also suggested that the officers at Pocahontas wear body cameras, for the safety of all.  *Id.*

Blake's grievance was deemed unfounded by Warden Hicks on December 2, 2022. The Offender Grievance Response – Level 1 stated:

> GRIEVANCE SUMMARY: You allege that you were beat, choked, kneed in the back, hog tied, knocked unconscious and sprayed with mace by staff due to refusing to take a knee when Officer Sagady ordered.
>
> RESULTS OF INFORMAL PROCESS:  You submitted Written Complaint #PSCC-22-INF-01059.  Investigator Johnson stated, "Rapid Eye footage shows you resisting Officers and failing to comply.  Footage does not show you being beat to the ground as you wrote.  This case has been forwarded to SIU for investigation."
>
> INVESTIGATION:  Your allegations were reviewed.  According to investigative reports, you failed to comply with directives from staff and resisted restraints, during which time OC spray was utilized according to procedural requirements.  Once you were able to be restrained, you were transported to RHU, according to procedure, decontaminated, and moved to a cell.  This was sent to SIU Agent Wagner and has been sent to the Tazewell County Courts for simple assault criminal charges.  There is no evidence of staff beating, choking, hog tying, kneeing, or knocking you unconscious; procedures were followed based on your actions toward staff.

> THE PROCEDURE AND CONTENT WHICH GOVERN THE
> ISSUE: Restricted procedure governs this issue.
>
> DETERMINATION:  Based on review of the above information I
> find no policy or procedural violations.  Your grievance is
> UNFOUNDED.

*Id.* at 49.

Blake timely appealed the Level 1 response, stating that he wished to appeal because "I was beat by staff, choked, Hog tide and knocked unconscious. What staff did to me was unprofessional and inappropriate." *Id.* Carl Manis, Regional Administrator, denied his appeal on December 28, 2022.  The Offender Grievance Response – Level II stated:

> Your grievance appeal has been reviewed along with the response
> from the Level I respondent and your original complaint.
>
> Based on the information provided, I am upholding the decision of
> the Level I respondent, which has determined that your grievance
> is **unfounded.**  I find no violation of policy.
>
> In accordance with Operating Procedure 866.1, Offender
> Grievance Procedure, this is your **last level** of appeal.  You have
> exhausted all administrative remedies.

*Id.* at 48.    This lawsuit followed, filed June 28, 2023.

### III. DISCUSSION

There is no dispute that Blake properly exhausted his claims for excessive force and bystander liability.  However, neither his written complaint nor his grievance mentioned due process, retaliation, deliberate indifference to medical needs, false arrest/malicious prosecution, or failure to train staff.  Because a primary purpose of the exhaustion requirement is to allow prison officials to investigate and resolve a problem as early as possible,  *see Woodford*, 548 U.S. at 93–94, a plaintiff must supply sufficient detail for the prison to understand what the complaint is.  A grievance may be rejected for providing insufficient information. *See Custis v. Davis*, 851

F.3d 358, 360 (4th Cir. 2017) ("According to the Virginia Department of Corrections grievance form, grievances can be rejected upon intake for . . . providing insufficient information.").

Even though several claims may be related to the same incident, an inmate must provide information on each issue about which he is upset. *See Green v. Rubenstein*, 644 F. Supp. 2d 723, 746 (S.D. W.V. 2009) ("Clearly, Plaintiff exhausted administrative remedies with respect to his Eighth Amendment claim that Defendants acted with deliberate indifference to his serious dental needs.  It is not evident that Plaintiff complained [that the delay in treatment was] in retaliation for his filing of a lawsuit against the Defendants.  Plaintiff has therefore not exhausted administrative remedies with respect to this claim . . ."); *Dorsey v. Shearin*, No. GLR-15-3645, 2018 WL 1570246, at *6 (D. Md. March 30, 2018) (holding that exhausted grievance alleging infringement of plaintiff's First Amendment right to exercise religious practices of the Blackfoot Tribe, but did not exhaust retaliation claim alleging placement in higher security level for complaining about Native American worship services), , *aff'd*, 737 F. App'x 176 (2018) (unpublished) (per curiam).

Further, the Grievance Procedure requires grievance forms to contain one, and only one, grievable issue.  Op. P. 866.1 § III(B)(1).  Filing more than one issue on a single grievance form would cause rejection and return of the grievance.  Smalling Aff., Dkt. No. 163-1, p. 3, ¶ 9. Submitting two issues on a grievance form would not be proper compliance with the administrative exhaustion procedures. *Harper v. Laufenberg*, No. 04-C-699-C, 2005 WL 79009, at *2 (W.D. Wis. Jan. 6, 2005)  If the grievance is rejected and returned, an inmate can resubmit the claim properly—as two separate grievances—within the time limits or appeal the intake decision.  If the rejection is upheld on appeal and the issue has not been properly submitted and

13

accepted as a grievance and decided on the merits, however, the issue has not been exhausted. *Id.*

I will explain how these general principles about exhaustion apply to preclude Blake's claims for "due process," retaliation, deliberate indifference to medical needs, malicious prosecution, and failure to train..

## A.  Due Process

Plaintiff has alleged that Warden Hicks violated his due process rights by allowing him to be injured by forceful security measures. Dkt. No. 132 at 5, 22.  As defendants correctly note, this is not a due process issue.  Due process requires that an interested party have adequate notice and an opportunity to object before being deprived of property or liberty.  *United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260, 272 (2010).  Rather, Blake appears to be trying to hold Hicks liable because she was the acting warden, the head of the facility.  He made no claim against Hicks in his Written Complaint and Grievance.  He did not allege due process violations and he did not attempt to allege supervisory liability.  Even if he had exhausted a supervisory liability claim, on the facts alleged, he could not prevail.  Government officials may not be held liable under § 1983 for unconstitutional behavior of their employees or subordinates; the tort doctrine of vicarious liability or *respondeat superior* does not apply.  *King v. Riley*, 76 F.4th 259, 269 (2023).  Accordingly, Hicks is entitled to summary judgment on this claim..

## B.  Retaliation

In his Written Complaint and Grievance, Blake never stated that he thought defendants Remines, Salyers, Brandon Smith, Edmonds, Cline, Dye, Browning, or Bogle joined in assaulting him in retaliation for a prior grievance. Because he did not make his claim for retaliation in his grievance, Blake failed to exhaust his remedies for retaliation. *E.g., Green*, 644

F. Supp. 2d at 746.  Therefore, these officers are entitled to summary judgment on the retaliation claim.

## C.  Deliberate Indifference to Serious Medical Needs

Blake alleges deliberate indifference to his serious medical needs by Hicks, Cordle, Lee, and Brandon Smith.  Although "real medical attention" was part of the remedy Blake sought, that was the remedy sought for excessive force, not the basis of the grievance.  Nothing in the written complaint or grievance alleged lack of medical care or deliberate indifference to injuries.  The Written Complaint and Grievance did not describe the injuries Blake suffered in any detail beyond the transient inability to breathe because of the OC spray and swelling on his face.  He did not say that he had asked for medical help and been denied. He did not say what medical treatment he needed.  He did not identify any of these four defendants in his grievance.  In short, he did not provide sufficient information to state a medical indifference claim.  *See Custis*, 851 F.3d at 360 (recognizing insufficient information as a valid reason to reject a grievance). An official reading Blake's Written Complaint and Grievance would not be expected to understand that he was alleging deliberate indifference to medical needs.  Hicks, Cordle, Lee, and Brandon Smith are entitled to summary judgment on the deliberate indifference claims.

## Malicious Prosecution and Retaliation

Blake alleges that Johnson, Wagner, and Lawson,[2] all from the SIU investigative unit, conspired to prepare false documents about the incident.  *Id.* at 19.  He further alleges in the Third Amended Complaint that Johnson and Wagner conspired to bring fraudulent charges against him and to testify untruthfully before the grand jury in retaliation for Blake's excessive

---

[2] In Blake's opposition to summary judgment, he clarifies that Johnson and Wagner failed to report their investigation accurately and completely, but he acknowledged that Lawson only signed off on the report as their supervisor.  Dkt. No. 193 at 15.  Thus, he essentially acknowledged in his opposition to summary judgment that he does not have a claim against Lawson, and Lawson is entitled to summary judgment.

force lawsuit.  Dkt. No. 132 at 19–20. The court and the defendants have interpreted these claims as malicious prosecution and retaliation claims.  Blake could not have complained of false arrest/malicious prosecution when he filed his grievance in 2022, because he had not yet been charged with a criminal offense, nor had the criminal case ended in his favor.  He had not filed a civil suit in 2022 for them to retaliate against.  It is not possible to exhaust a future event, and future events are not grievable.  Op. P. 866.1, § III(B)(1)(b)(vi).

Blake's cause of action for malicious prosecution accrued on the date the charges against him were dropped, which is when he had a "complete and present cause of action." *McDonough v. Smith*, 588 U.S. 109, 115 (2019).  That is when he could have filed a grievance alleging malicious prosecution.  Once he exhausted that grievance, he could have amended the lawsuit to add the claim, as he did after the criminal charges were dropped. *Ramirez v. Collier*, 595 U.S. 411, 423 (2022).  However, he never filed a grievance about malicious prosecution, so the claim remains unexhausted.   Therefore, Johnson and Wagner are entitled to summary judgment in their favor.

## E.  Failure to Train

Blake alleges that Hicks and Lee failed to properly train the officers at Pocahontas on proper use of force.  However, Blake mentions nothing about training in his grievance, and does not name these defendants in his grievance.  This issue was not exhausted, and Hicks and Lee are entitled to summary judgment on this issue.

## IV. CONCLUSION

The only claims properly exhausted by Blake were his claims for excessive force and bystander liability for failure to protect by the officers who were present at the time of the incident on September 13, 2022.  His claims for retaliation, deliberate indifference to medical

needs, due process, failure to train, and malicious prosecution must be dismissed for failure to exhaust.  Because the only claims asserted against Warden Hicks, Nurse Cordle, Lawson, Johnson, and Wagner were not exhausted, dismissal of those claims operates as dismissal of those parties from the suit.  Summary judgment will be granted in favor of Lee on the claims against him for deliberate indifference to medical needs and failure to adequately train officers, but the claim against him for bystander liability remains.  Summary judgment will be granted in favor of Brandon Smith and Sargent on deliberate indifference to serious medical needs, but the claims against them for excessive force and bystander liability will remain.  The claims of excessive force and/or bystander liability against the remaining defendants, Remines, Salyers, McBride, Edmonds, Cline, Dye, Daniel Smith, Whited, Hylton, and Browning[3] will proceed to trial along with the remaining claims against Lee, Brandon Smith, and Sargent.An appropriate order will be entered on this day.

Enter:  January 30, 2026

*/s/ Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[3] The claims against Bogle for excessive force and bystander liability cannot proceed because he is now deceased.